UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:15-cr-222-T-23TBM

RICHARD FABIAN
_____/

SENTENCING MEMORANDUM OF THE DEFENDANT, RICHARD FABIAN

The Defendant, RICHARD FABIAN, by and through his undersigned counsel, hereby submits the following sentencing memorandum of fact and law:

Factual Background

In this world, some children are raised by loving parents who look after them and show them the right way. Others, like Mr. Fabian, simply grow up, largely on their own, and with little supervision or guidance from anyone. One can readily tell what happened to Mr. Fabian. Mr. Fabian isn't sure about where he was born or even his own birthday. [PSI at para. 38.] He only met his mother five years ago, and discovered he had three half-siblings. [PSI at para. 40.] The fact no one seems to know any of the last names of his half-brothers and sisters (perhaps not even his own mother) is telling.

1

Mr. Fabian's father seemingly only expressed an interest in Mr. Fabian as a boy when he could pry free work out of him. While Mr. Fabian, even to this day, tries to put a good face on all this, the facts tell a completely different story. Nearly all of Mr. Fabian's childhood memories of his father center somehow around his father gathering him up to go work somewhere. If his father couldn't work his son, he wasn't particularly interested in him. His father could not manage to take his son to school ever, not even for a single day. As a result, and to this day, Mr. Fabian cannot read or write in any language whatsoever.

Even when Mr. Fabian grew into adulthood, his father still really only looked at Mr. Fabian as a source of income. While the PSR summarily reflects that Mr. Fabian and his father went to Ecuador to find better work, it was really Mr. Fabian who went, and his father tagged along later after Mr. Fabian found work. [PSR at para. 42.] It was at this time Mr. Fabian found work with a subcontractor who essentially provided dogsbody services to the real workers at the oil refinery. [PSR at para. 51]. Once this panned out, Mr. Fabian went back to his usual run of being exploited by others for low or no pay. [PSR at para. 51.] One could make the argument, overall, that this was the story of Mr. Fabian's life.

Indeed, in a strange way, the only persons who have actually paid Mr. Fabian any real positive attention in his whole life have probably been our courts. Since Mr.

Fabian has been arrested, he has been provided with steady meals, medical care, a real roof over his head, and certainly a reduced exposure to exploitation and harm. Most of all, folks have actually been paying real attention to him and looking out for his welfare, probably for the first time in his life. Comparing his arrest photos with his current booking photo at the Hernando County Jail shows the phenomenal transformation. Of course, some would argue that the "attention" paid to arrestees and inmates is not necessarily positive, nor is it the type of attention most of us would prefer. However, when someone has basically been abandoned, ignored, and exploited by his family and his so-called "friends" from the day he was born, even marginal, and perhaps negative, attention is still attention and has a positive value. Folks may want to be loved or hated, but no one wants to be ignored or forsaken.

Mr. Fabian has readily admitted his guilt in this offense, knows what he did was wrong, and is willing to accept the consequences for what he did. [PSR at para. 18-19.] Like many others caught up in the low end of the multi-trillion dollar drug industry, Mr. Fabian did it because he was desperately poor and desperately needed the money. [PSR at para. 19.] Ultimately, Mr. Fabian was targeted by those in the drug trades who, much like those seeking children for Southeast Asian brothels, seem to have an peculiar eye for chickenhawking the naive and the desperate. To his handlers, much like everyone else in his entire life, Mr. Fabian was fungible, like

wheat; a commodity to be used for commercial profit and gain and little else. Unfortunately, we do not have his handlers for sentencing; nor do we have those who actually make the trillions of dollars available in the drug business. Instead, we have Mr. Fabian, perhaps the lowest rung on the drug cartel ladder. The issue today is what sentence is appropriate for someone like Mr. Fabian; someone who has been abandoned and neglected basically from birth and left to grow wild, with no specific direction, upbringing, or education.

The 3553 Factors, the Guidelines, and Variances

Under the applicable guidelines, Mr. Fabian scores an Offense Level 33 and a Criminal History category of I, for a sentencing range of 135 to 168 months, with a 10 year minimum mandatory. [PSR at paras. 30, 33, 54, 55]. Interestingly enough, the PSR indicates that, due to Mr. Fabian's "larger role" status as a trafficked, fungible boat person, a variance may be warranted in this case. [PSR at para. 70.] Mr. Fabian would assert that, in keeping with the suggestions of the United States Probation Office, a variance in this case is warranted, for perhaps more reasons than one. While Mr. Fabian will not go over all of the 3553 factors, he would like to point out some of the more salient factors in this case:

(a)(1) The nature and characteristics of the offense and the history and characteristics of the defendant. 18 U.S.C. sec. 3553(a)(1).

While typically, those caught in boat cases are not the most sophisticated or educated members of their representative nations, Mr. Fabian is a standout in the opposite direction. Even the average unsophisticated, uneducated boat case defendant has at least some degree of upbringing, and at least some degree of formal education. Mr. Fabian cannot read or write in any language whatsoever, has never seen the inside of a schoolroom, and was essentially left to grow, with no upbringing from his mother and questionable upbringing from his father. If there was someone ripe for being trafficked as a human being in the drug trade, it was Mr. Fabian. Arguably, that is exactly what happened.

Of course, even totally uneducated people can know something is wrong. Mr. Fabian understands what he did was wrong and he knows he should be punished. However, the sentencing guidelines are really designed for average people with average levels of sophistication in average cases. Mr. Fabian is not average. Everything in his personal fact pattern screams he is way below the average, even for the average boat case defendant.

<u>(a)(2) The need for the sentence imposed–</u>

<u>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;</u>

<u>(B) to afford adequate deterrence to criminal conduct;</u>

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. sec. 3553(a)(2)(A)-(D).

Perhaps the silver lining around the cloud of Mr. Fabian's arrest and prosecution is that it happened in federal court, where the Bureau of Prisons offers meaningful assistance to individuals like Mr. Fabian. It would seem that Mr. Fabian's difficulty is not that he is some budding criminal mastermind that needs to be locked up forever. Rather, Mr. Fabian is an uneducated, unraised person; a "throwaway person" of sorts. When Mr. Fabian was alerted that the Bureau of Prisons has educational and vocational opportunities available, Mr. Fabian showed a keen eagerness to participate in just about any program in which they would let him participate. Mr. Fabian would desperately like to learn to read and write in some language, whether it be English, Spanish, or both.

In addition, Mr. Fabian would like to participate in vocational training. After some discussion, it would seem that something in auto or diesel mechanics would be appropriate for his intended region of residence upon release. Mr. Fabian would also like to participate in the 500 hour drug treatment program, if that program is available to him. Indeed, Mr. Fabian is actually quite excited to have the opportunity to go to

school for the first time in his life and learn things. Mr. Fabian, perhaps above everyone else, knows that as an illiterate with no functional upbringing whatsoever, he is going to bat everyday, in every situation he encounters, with two strikes against him. Mr. Fabian, above everyone else, wants that to change.

Since this case carries a ten year minimum mandatory prison sentence, there is only a certain amount of leeway in which this Court may travel in a variance. However, it would seem a 120 month (10 year) prison sentence would certainly provide just punishment for what Mr. Fabian did. Also, it would provide Mr. Fabian with the opportunity to get educated (for the first time in his life) and obtain good real world skills (for the first time in his life), in an atmosphere where he is not being totally exploited by others (for the first time in his life). Certainly an educated, sophisticated Mr. Fabian will have the ability to say no to the chickenhawks of the drug trade. Chances are, an educated, sophisticated Mr. Fabian will be working and living a normal life, and will thus be far away from those looking for desperate, uneducated fools to risk their lives for pennies on bass boats out on the high seas.

## Facilities Preference

While Mr. Fabian understands that this Court's recommendation of a facility is not binding on the Bureau of Prisons, Mr. Fabian would like to be sent to Fort Dix, New Jersey. Mr. Fabian has heard many good things about that facility, and believes

that it may contain many of the resources he needs to get on the track towards both literacy and a firm vocational foundation.

Conclusion

It would seem that the best way to deter Mr. Fabian from getting into further problems (criminal or otherwise) is to get him out of the cycle where he is perpetually naive and desperate and falls into the schemes of designing individuals. With the ten year minimum mandatory, Mr. Fabian will have plenty of time to get educated, improve himself, and make sure that, when he leaves the Bureau of Prisons, he is educated and on solid footing. In doing so, this Court will have accomplished something his parents didn't bother to do, his own country didn't care to do, and no one else (until now) wanted to do: raise Mr. Fabian up into a solid citizen.

CERTIFICATE OF SERVICE

      I certify that, on January 7, 2016, a true copy hereof was furnished to: Joseph K. Ruddy, Esq., Assistant United States Attorney, through the CM/ECF system, and to Gail L. Stafford, United States Probation Officer, by email at Gail_Stafford@flmp.uscourts.gov.

/s/Christopher Desrochers
Christopher Desrochers
Christopher A. Desrochers, P.L.
2504 Ave. G NW
Winter Haven, FL 33880
(863) 299-8309
Fax:(863) 229-2839
Fla. Bar #0948977
cadlawfirm@hotmail.com
Appointed Counsel for Defendant.